## Grow *v.* Pottsville Borough.

*Negligence—Fire—Borough—Question for jury.*

In an action against a borough to recover damages for an injury to a lot, the case is for the jury where the evidence for the plaintiff, although contradicted, tends to show that plaintiff's lot and neighboring land were made up of a cinder dump in which was considerable material containing carbon ; that the borough negligently permitted combustible matter to be deposited on a road, and the approach to a bridge near by ; that this combustible matter took fire ; that the borough was further negligent in failing to prevent the fire from communicating to the cinder dump, and that finally to prevent the fire from communicating to the town, the borough dug a wide trench through plaintiff's lot.

Argued Feb. 15, 1900.  Appeal, No. 26, Jan. T., 1900, by defendant, from judgment of C. P. Schuylkill Co., Sept. T., 1894, No. 198, on verdict for plaintiff, in case of Henry Grow v. The Corporation of the Borough of Pottsville.  Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.  Affirmed.

Trespass to recover damages for injury to lots of ground by

reason of the alleged negligence of defendant in permitting fire to be communicated to the lots.    Before McClure, P. J., specially presiding.

The facts appear by the charge of the court which was as follows:

In this case the plaintiff seeks to recover damages from the borough of Pottsville for negligently, as the plaintiff contends, destroying his lot or lots, situate on Worman street.    It seems the plaintiff is the owner of some land adjoining this new bridge, which you have viewed, some ninety-seven feet in front, separated into two parts by a forty-feet lot owned by another party. The contention of the plaintiff is that these lots were in good condition, were up level with the street, free from fire, and that the borough, acting through its officers, negligently caused fire to be communicated to his lot or lots, and destroyed them, both by the fire and by digging in the lots to prevent the fire spreading to other property.

The gist of this action is negligence.    It is contended that the borough of Pottsville has been careless in the management of the streets in that neighborhood, and that it was by reason of this carelessness that the fire was communicated to the property of the plaintiff.    The land in this neighborhood was a cinder dump, according to the testimony of all of the witnesses, extending along the banks of the river.    There had been iron mills in operation a number of years ago, and the ashes from the puddling and heating furnaces were hauled out upon this dump, and evidently considerable material containing carbon was in it.    Mr. Grow's lots were composed of the same material.    The dump extended on eastward from his property.

The plaintiff's contention is that these lots were in good condition; that by the negligent act of the borough officers, in filling up a part of old Worman street, they allowed ashes and garbage containing about everything that you could name that could come from the town, to be dumped upon this street, much of it being inflammable matter; that burning material was hauled and dumped there and covered over by a man levelling the dump, who, one of the witnesses characterized as "the borough man."    It is contended by the plaintiff that this was the cause, the origin of the fire, and that the borough, having

knowledge of the material of which this dump was composed, and also of the road which they were making, was negligent, in the first place, in causing the fire, and in the second place, in allowing it to continue.

If you find that the borough started or caused the fire, it would be responsible for the result of it. [ If you find that the borough did not start the fire, but it was carelessly and negligently allowed by it to be communicated to the property of the plaintiff, it would be responsible for that, and should respond in damages to whatever amount the plaintiff has sustained.] [1]

The first question, we apprehend, you will have to determine will be where the fire started and how. We do not propose to recite to you the testimony of the witnesses. You have heard them all, and we have been assisted by able counsel in this case all the way through ; they have thoroughly discussed the matter before you, and I have no doubt rendered all the assistance in their power to have you arrive at a proper conclusion as to the origin of the fire, the plaintiff contending that it was caused by this burning material hauled out upon the dump, the defendant contending that was not the cause of the fire at all, but that the fire had been in this dump many years, one witness going back to the fifties, another to 1879, and another placing the fire along the line of the river farther on and where the dump was made by the borough. You will have to take the testimony of all these witnesses and determine where it was that that fire started and how. [If you find, as we have said, that the fire was started by the borough, then it is responsible. If it was not started by the borough, then you go a step further and ascertain whether or not the borough was careless and negligent in the handling of it.

The plaintiff contends that this fire was of small size and known to the officials, as the supervisor was about there, and that, as one witness put it, it could have been put out with a man in a few hours' time. It is necessary for that knowledge to be brought home to the officers of the borough unless it actually, through its agents, caused the fire. If the officials had knowledge of this fire, did they act as prudent, careful men would under the circumstances ? That is the rule which guides all people, borough officials and men in private station. If you

seek to hold a man guilty of negligence, you must show that he has not acted as a careful, prudent man would under the circumstances, that is, an ordinarily prudent and careful man. So you will have to take into consideration all the circumstances connected with the fire, the character of the material on the land, the distance from other properties, and the knowledge which an ordinary man would have of putting out a fire of that kind. This was not an ordinary fire such as we have fire apparatus to combat, houses, buildings, but it was a subterranean fire running along under the surface of the ground. It will be for you to say whether or not this borough council acted as careful, prudent men would under the circumstances, in the extinguishment of the fire. If it did, then the borough is not responsible for the spread of the fire.] [2]

The evidence on the part of the defendant is that when this fire was discovered in 1893 (it was discovered in November, 1892, by the plaintiff's witnesses) operations were commenced with a view to extinguish it by water; that they opened fire plugs in the town and conducted the water there by hose; that they dug trenches and ran the water in those and used means of this kind for months; that they were unsuccessful and afterwards tried chemicals; that that also proved unsuccessful, and the fire still continued to work its way westward, and finally came upon the plaintiff's property.

If the fire got into the plaintiff's property without any fault of the borough, we would say to you that it had a perfect right to go there and remove his property, dig it out, haul it away, or do any other thing that was necessary, and that would accomplish the object of putting out the fire and preventing its spread to neighboring properties. The evidence is that there were some twenty-one houses that were endangered by the spread of the fire direct. Besides, the smells that arose from it constituted an annoyance to the whole neighborhood and a nuisance to the town. The borough would have the right, if free from fault, to go upon the property and do as it did to cut off the fire.

You understand the reason for that. Suppose in a row of houses connected together the end house should start to burn. When the fire company would come there, that is the borough acting through a fire company, it would have a perfect right to

destroy the second house in order to save the balance of the row. The reason of that is plain. If it was not destroyed by tearing down, it would be destroyed by burning. There it is a matter of public necessity. The building is destroyed and the owner must suffer the loss without remedy as against the borough. So here Mr. Grow must stand this loss, if this fire was in his lot without the negligence of the borough. The great question for you to determine is, did the borough set it on fire? Or, second, did it carelessly and negligently allow it to approach his lot? If it was through its negligence that it got into his lot, the digging of his lot away would not relieve it from responsibility for its acts.

The defendant's contention, as we stated, is that the fire did not originate as the plaintiff says; that it had been there for years, that it originated on the Haywood lots, and was communicated from there through underneath the surface to the property of the plaintiff, and that the borough exercised all the care and diligence that a reasonably careful and prudent man would under the circumstances. Lastly, the borough claims that even if the property was burned, that the plaintiff has sustained no damage, because his lots are now worth as much, if not more, than they were before.

If you find that the defendant is responsible for this fire and the destruction of the property, you come then to the last question in the case, what are his damages? There is evidence on the part of Mr. Grow that the property was worth $2,500, and that now it is worth nothing. Mr. Wagner testifies it was worth $300 for a twenty-foot lot, now worth nothing. Mr. Donne said it was worth $2,500, now worth nothing. Mr. Kershner testifies it was worth $1,500 to $2,000, now worth nothing. That is only part of the testimony in the case; we do not pretend to cite it all; we simply cite some of the witnesses and recall it to your memory. You will remember all that has been testified on that subject.

One of the defendant's witnesses, Mr. Helms, stated that the property had no value before, and now it has some value, because the inflammable material was off of the property, burned off, and it is now safe for a man to build a house there, which it was not before. Mr. Snyder thought the property was worth $10.00 a foot, and now it is worth nothing. Mr. Sheafer thought

it was worth $300, but was worth more afterwards than before
the fire.   He gave, we believe, as a reason, that a foundation
could be secured to build upon the property.   Mr. Otterbein
thought it was worth from $10.00 to $12.00 a foot.

There is evidence on the part of the defendant that this prop-
erty could be restored to its former condition without cost to
the plaintiff.   That is a question you will have to determine.
The plaintiff claims it could not be restored at all, and that even
if it were filled up with earth from excavations of cellars, it
would require years for it to settle so that a safe foundation
could be erected upon it; also, that the fire is there surrounding
the property on two sides; that, therefore, it is not at all desir-
able for building purposes, and that a man would not, under the
circumstances, erect a building upon the property.   The bur-
den in all cases rests on the plaintiff to prove to a jury that
the defendant is negligent, and also to prove the amount of
his damages; in other words, when a man comes into court, he
should show by the weight of the testimony that his contention
is worthy of belief.

If you find the plaintiff has sustained damages and that the
defendant is liable for those damages, then you must assess
them, and the measure of those damages would be the cost of
the restoration of those lots by Mr. Grow, if they can be re-
stored, unless that cost equals or exceeds the depreciation in the
value of the property, in which event the depreciation would
be the measure of damages.   If the lots cannot be restored, then
the depreciation or the value of the property destroyed would
be the measure, and whether they can or not is a question for
you to decide under all the testimony in the case.

This fire occurred some years ago, and the testimony of the
witnesses was necessarily not consistent.   If you go back five
or six years it is very difficult for honest, well-meaning people
to agree on dates and times for the happening of certain events.
We have found that illustrated in this case.   It is for you to
say which of these men have told the truth.   Many of them
may have supposed they were telling it, but there are discrep-
ancies in the testimony which it is necessary for you to rec-
oncile, or to determine who of them you will believe and who
not.   The credibility of the witnesses is always for the jury,
and with that the court has nothing to do.

Verdict and judgment for plaintiff for $1,771.55. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*Guy E. Farquhar,* with him *Arthur J. Pilgram,* for appellant.—A municipal corporation is not responsible for the spreading of a fire, which started in private property without any agency of the municipality: 2 Dillon on Municipal Corporations (3d ed.), sec. 951; Carr v. Northern Liberties, 35 Pa. 324; Grant v. Erie, 69 Pa. 420; Canavan v. Oil City, 183 Pa. 616; Fair v. City of Philadelphia, 88 Pa. 309; Mills v. Brooklyn, 32 N. Y. 489; Smith v. Mayor of N. Y., 66 N. Y. 295; Collins v. Philadelphia, 93 Pa. 272; Bear v. Allentown, 148 Pa. 80; Gold v. Philadelphia, 115 Pa. 184; Megargee v. Philadelphia, 153 Pa. 340.

*W. J. Whitehouse,* with him *George W. Ryon,* for appellee.— If a party has sustained any special damages for a public nuisance, beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance for redress: Penna. & Ohio Canal Co. v. Graham, 63 Pa. 290; Pittsburg City v. Grier, 22 Pa. 54; Griffiths v. McCullum, 46 Barbour, 561; Pittsburg v. Scott, 1 Pa. 319; City of Denver v. Mullen, 4 Am. & Eng. Corp. Cases, 312; City of Fort Worth v. Crawford, 8 Am. Eng. Corp. Cases, 406; Erie v. Schwingle, 22 Pa. 385; Mills v. Hall, 9 Wend. 315; Hughes v. Heiser, 1 Binn. 463; Pottsville Boro. Charter Act, Feb. 19, 1828, P. L. 100; West Mahanoy Twp. v. Watson, 116 Pa. 344; Baker v. Boston, 12 Pickering, 184.

The negligence for which a borough may be liable to one injured by it, may, for convenience, be divided into three classes: (1) negligence in the prosecution of its own improvements; (2) negligence in not removing or preventing dangers put by nature upon its highways, and (3) negligence in not removing or preventing dangers put thereon by the acts of individuals: Trickett on Penna. Borough Law, 433.

OPINION BY MR. JUSTICE BROWN, October 8, 1900:

This case was for the consideration of the jury. The court

could not have withdrawn it from them. We have discovered no substantial error in the record, and, substantial justice having been done by the verdict of the jury, the judgment on it is affirmed.